# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>146 ROBELEI DRIVE, RANSON, WEST VIRGINIA 25438 | Case No. 3:19mj4<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Sergeant Jonathan Bowman being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Senior Investigator with the West Virginia State Police Bureau of Criminal Investigation. I have been with the West Virginia State Police (WVSP) for over fourteen (14) years. I was hired by the West Virginia State Police in August of 2004 and graduated the West Virginia State Police Academy in February of 2005. I worked as a uniformed Trooper at the WVSP-Martinsburg Detachment until September of 2014.

2. Since September of 2014, I have been assigned to work on the Eastern Panhandle Drugs and Violent Crimes Task Force (EPD&VCTF) and am deputized by the U.S. Department of Justice, Federal Bureau of Investigation as a "Special Federal Officer." As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

3. My experience includes work as a uniformed Trooper conducting criminal and drug investigations, and as such, I have become associated with drug dealers and users. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed; the methods of arranging drug transactions, the methods of payment for such drugs; the possession and use of firearms in connection with the trafficking of such drugs; and the manner in which narcotics traffickers store and conceal the proceeds of their illegal activities. I have conducted multiple drug enterprise investigations in which Title –III interception authority has been sought and obtained. To date I have participated in numerous Title-III investigations that have been approved and authorized in the Northern District of West Virginia.

4. I am currently participating in the investigation into heroin trafficking by numerous subjects, including ARMSTEAD CRAIG, who have conspired to, and engaged in the trafficking of large quantities of heroin from Baltimore, Maryland, to the Eastern Panhandle of West

1

Virginia, specifically Jefferson County, in the Northern District of West Virginia. The investigation includes electronic surveillance of the subjects, and Task Force Officers have observed suspected heroin and cocaine deals. Task Force officers have conducted electronic surveillance and physical surveillance of CRAIG and other co-conspirators.

5. All information contained in this affidavit, from whatever source derived, is either personally known to me or has been related to me by other sworn law enforcement personnel. This affidavit does not contain all facts known to law enforcement officials about the investigation described herein.

It has been my experience that:

6. Individuals who participate in trafficking of illegal controlled substances keep such controlled substances, as well as paraphernalia, in their residences, vehicles, and storage units. In addition, people who deal in illegal controlled substances also maintain books, records, receipts, notes, ledgers, bank records, money orders, and other papers relating to the importation, manufacture, transportation, ordering, sale, and distribution of illegal controlled subjects. These books, records, receipts, notes, ledgers, bank records, money orders, etc., are maintained in locations to which the dealers in illegal controlled substances have ready access, such as in secure locations within their residences and their curtilage, the residences of family members, friends, and associates, the places of operation of their drug distribution activities, such as stash houses or safe houses, in business locations with which the trafficker is associated, or in storage areas. I know that individuals involved in narcotics distribution often maintain these records for lengthy periods of time, and often hide them in places in their homes to avoid detection. Further, these individuals who deal in illegal controlled substances often store hard copy and electronic records associated with their illicit narcotics trafficking for long periods of time.

7. Individuals engaged in conspiracies to distribute Heroin and possess with intent to distribute heroin routinely conceal in their residences or curtilage, the residences of family members, friends, and associates, as well as their other business locations, storage areas, safety deposit boxes, or in the places of operation of their drug distribution activities, such as stash houses or safe houses, large quantities of currency, financial instruments, precious metals, jewelry and other items of value, typically proceeds of illegal controlled substance transactions.

8. Individuals engaged in conspiracies to distribute heroin and possess with intent to distribute heroin commonly maintain telephone numbers and address books or papers which reflect names, addresses, or telephone numbers for their associates in their illegal organizations. These individuals often utilize cellular telephones, paging and telephone systems to maintain contact with the associates in their illegal business. These telephone records, bills, and pager numbers are often found in their place of residence, or the residences of family members, friends, or associates, in their business locations, or in the place of operation of their drug distribution activities, such as stash houses, safe houses, or storage areas.

9. Individuals engaged in the type of criminal conduct described herein often photograph themselves, their associates, their property, and illegal contraband. These photos are usually maintained in their place of residence, or the residences of family members, friends, or associates, in their business locations, or in the places of operation of their drug distribution activities, such as stash houses, safe houses, or storage areas.

10. Individuals engaged in the type of criminal conduct described herein often use firearms to further their criminal activity. These individuals often carry or store firearms on their person and in their residences, vehicles, and storage units. Firearms may be used for personal protection and to protect the illegal contraband. Firearms may also be traded for other illegal contraband.

11. Through my training and experience, I have become familiar with the methods of operations typically utilized by individuals who distribute drugs. I know that it is common practice for drug traffickers to routinely utilize telephones, mobile phones, prepaid phones, calling cards, text messaging, counter-surveillance, false or fictitious identities, and coded communications to communicate with their customers, suppliers, and other conspirators for the purpose of insulating themselves from the detection of law enforcement. Moreover, it is not unusual for them to initiate such mobile or prepaid phone service in the name of an associate or family member or in the name of a fictitious individual. The individuals often require the use of a telephone facility to negotiate times, places, schemes, and manners for importing, possessing, concealing, and distributing controlled substances, and for arranging the concealment of proceeds derived from the sale of controlled substances.

I further depose and state that:

Northern District of West Virginia Title III Wiretap Authorizations

12. On September 18, 2018, Chief United States District Judge Gina Groh authorized interception of 304-279-7128 (TP2) filed at Northern District of West Virginia (NDWV) case number 3:18MC104. Interception began on September 18, 2018 and authorized through October 18, 2018. TP2 was confirmed to be utilized by and in the possession of JANSEN CARR and VICTOR CARR (herein referred to as "Vic") during the captioned period of interception. Interception of TP2 ceased on October 5, 2018.

13. On October 5, 2018, Chief United States District Judge Gina Groh authorized the initial interception of 304-240-6755 (TP3) and 304-240-2076 (TP4) filed at Northern District of West Virginia (NDWV) case number 3:18MJ99. Interception began on October 5, 2018 and ceased on November 5, 2018.

14. On November 6, 2018, Chief United States District Judge Gina Groh authorized a 30-day extension to intercept 304-240-6755 (TP3) and an initial authorized interception of 240-586-3412 (TP5) filed at Northern District of West Virginia (NDWV) case number 3:18MJ103. Interception began on November 6, 2018 and terminated on December 5, 2018.

15. On December 11, 2018, an extension was authorized by Chief United States District Judge Gina Groh to continue interception, for a 30-day period, of TP3 and TP5. The authorized extension is scheduled to terminate on January 9, 2019.

16. ARMSTEAD CRAIG also known as (aka) "Manny", JANSEN CARR, MOLLY HUBER, BONI FACIO ARAMBURO also known as "Bunz" herein referred to as BONELLI, and SANDRA ARAMBURO aka "Sandra Craig", HOPETON NEWMAN, SHAWN MURRAY as well as several additional drug co-conspirators, were confirmed to have been intercepted over the noted authorized interceptions is initial authorized interception.

## Subjects and Offenses

17. I have participated in the investigation of the drug trafficking activities related to ARMSTEAD CRAIG, a/k/a "Manny", JANSEN CARR, MOLLY HUBER, and SANDRA ARAMBURO aka "Sandra Craig", BONI FACIO ARAMBURO also known as "Bunz" herein referred to as BONELLI, HOPETON NEWMAN, SHAWN MURRAY and other identified and yet to be identified drug trafficking co-conspirators. The investigation has revealed that CRAIG distributes crack cocaine and heroin in the Northern District of West Virginia.

## Investigative Objectives

18. There is probable cause to believe that Armstead CRAIG has and is currently utilizing the residence described at 146 Robelei Drive, Ranson, WV 25438, to store, maintain, conceal, and distribute illegal narcotics; more specifically, cocaine, a Schedule II narcotic drug and heroin, a Schedule I narcotic drug, as well as the items listed in Attachment B, which are evidence of drug trafficking.

## Facts and Circumstances

19. On or about March 2018 an investigation related to the trafficking of illegal narcotics in Jefferson County West Virginia for distribution to residents of West Virginia's Eastern Panhandle region was opened by the Task Force.

20. On Thursday, November 1, 2018, a pole camera was installed on Robelei Drive in Ranson, Jefferson County, WV. This pole camera has been useful to observe subjects coming and going from 146 Robelei Drive. Since the installation of the pole camera, TFO's have been able to observe known narcotics offenders and vehicles belonging to known narcotics offenders at the residence. At times, CRAIG will park vehicles, that he is known to operate and maintain control of, at the residence. These vehicles are known to stay parked at or around the residence for long periods of time.

21. On Thursday, November 22, 2018, TFOs intercepted communications via court authorized Title III (3:18MJ103) between Armstead CRAIG and JANSEN Carr, wherein CRAIG spoke with Wayne CLYBURN to distribute narcotics to JANSEN. CRAIG directed JANSEN, with

       CLYBURN's permission, to 146 Robelei Drive, Ranson, Jefferson County, WV 25438. CRAIG referred to this residence as his mother's residence.

22.    During this investigation, TFO's have received information via confidential informants and/or intercepted communications via court authorized Title III (3:18MJ103) that CRAIG often utilizes various vehicles to store narcotics. CRAIG is known to have vehicles at various locations and often parked along Robelei Drive. Utilizing the pole camera, investigators have observed subjects walking from 146 Robelei Drive to 193 Robelei Drive and vice versa. Investigators have identified 193 Robelei Drive to be occupied by CLYBURN. Investigators have also identified 193 Robelei Drive as another storage location of cocaine and possible other controlled substances.1

---

1 The following is the probable cause as it relates to 193 Robelei Drive, Ranson, West Virginia, which your affiant has applied for a separate search warrant:

On Wednesday, October 17, 2018, TFOs intercepted communications via court authorized Title III (3:18MJ103) between Hopeton NEWMAN and Armstead CRAIG, wherein NEWMAN brokered a transaction of cocaine base to be purchased from CRAIG. CRAIG directed NEWMAN to 193 Robelei Dr., Ranson, Jefferson County, WV 25430. NEWMAN traveled to that location and advised CRAIG that he was there. NEWMAN advised Craig that he wanted 45 grams of cocaine base.

On Friday, October 26, 2018, TFOs intercepted communications via court authorized Title III (3:18MJ103) between Shawn MURRAY and CRAIG, wherein MURRAY brokered narcotics transaction of cocaine and heroin to be purchased from CRAIG. MURRAY advised his time frame that he would arrive at the agreed upon meeting location. CRAIG then contacts VICTOR Carr and advises him that someone would be showing up at his residence. MURRAY arrives at 96 Stayman Drive, Ranson, Jefferson County, WV and advises CRAIG he was there. CRAIG calls JANSEN Carr and tells him to come pick him up at 193 Robelei Drive. JANSEN is seen leaving the residence and driving to Robelei Drive and picked up CRAIG. JANSEN is then observed traveling back to 96 Stayman Drive. MURRAY then met with CRAIG at the residence. It is believed that CRAIG obtained cocaine base to sell to MURRAY from 193 Robelei Drive prior to the transaction at 96 Stayman Drive.

On Thursday, October 18, 2018 TFO's intercepted communications via court authorized Title III (3:18MJ103) between Jason PLUMMER and CRAIG, wherein PLUMMER brokered a heroin transaction from CRAIG. CRAIG directs PLUMMER to 193 Robelei Drive. TFO's observed PLUMMER arriving at the residence driving a black Chrysler 300 with VA registration (WWV8561). PLUMMER is known to be the primary driver of this vehicle.

On Thursday, November 1, 2018, a pole camera was installed on Robelei Drive in Ranson, Jefferson County, WV. This pole camera has been useful to observe subjects coming and going from 193 Robelei Drive. Since the installation of the pole camera, TFO's have been able to observe a higher than normal amount of vehicles coming and going from the residence. At times, the vehicles pull up in front of the residence. The individuals approach the front door of the residence and are let inside. The individuals exit the residence and leave in their vehicles a short time later. TFO's have also been able to observe individuals to approach the residence on foot. The individuals are let into the residence and exit a short time later.

On Thursday, November 1, 2018 TFO's intercepted communications via court authorized Title III (3:18MJ103) between Shawn MURRAY and CRAIG, wherein MURRAY brokered a narcotics transaction of cocaine and heroin to be purchased from CRAIG. MURRAY advised of his time frame that he would be arriving at the agreed upon meeting location. Prior to the transaction, CRAIG is seen leaving his residence at 412 E. 10th Ave. in Ranson, Jefferson County, WV with his wife Sandra CRAIG (Aramburo). Sandra and CRAIG utilize a white Buick, registered to Sandra, and drive to 96 Stayman Drive. CRAIG exits the passenger seat of the vehicle and approaches

23. As a result of this investigation, your affiant is now requesting a search warrant be issued to search the residence located at 146 Robelei Drive, Ranson, Jefferson County, West Virginia and any out buildings, sheds, curtilage and vehicles. I submit that 146 Robelei Drive, Ranson, West Virginia, is a depot for the storage of cocaine, and possible other controlled substances, as well as for breaking larger quantities of cocaine down into smaller packages for resale purposes.

24. On December 23, 2018, wire monitors intercepted communication over TP3 where an unknown male contacts CRAIG by text message and tells him he is going to hurt his son. CRAIG calls the male and attempts to figure out who the caller is and why he wants to beat up his son. The male identifies himself as CORY. The male is uncooperative on the phone and continues to tell CRAIG is he going "fuck him up and his son." After this series of calls, CRAIG contacts MICHAEL HUGHES and asks him to get his gun and pick him up. HUGHES advises JANSEN is closer to call him. CRAIG calls JANSEN and directs him to get his gun and drive CRAIG's vehicle parked at his house and pick him up. CRAIG advises he has to go to CRAINES. The unknown male continues to threaten via text message CRAIG's family and associates. The unknown male calls him a bad parent and drug dealer.

25. The EPD&VCTF after receiving these calls, contacted Ranson Police Department and informed them of the possible violent altercation to take place in Ranson, WV. The uniformed officer was unable to observe CRAIG and the unidentified male. The EPD&VCTF traveled

---

the residence. CRAIG returns moments later carrying a yellow plastic bag. The two leave and drive to 193 Robelei Drive where CRAIG exits the passenger seat and approaches the rear of a conversion van parked in the driveway of the residence. CRAIG unlocks the rear doors of the van and removes a white bag. CRAIG re-enters the Buick and the two travel back to 412 E. 10th Ave where CRAIG enters the residence with both bags. CRAIG and Sandra exit the residence and leave in a black Infinity. The two travel to 96 Stayman Drive. CRAIG exits the Infiniti and meets with MURRAY. Task Force officers were able to surveillance MURRAY into Loudoun County, VA where a traffic stop was initiated. After a pursuit, MURRAY was apprehended. Cocaine and heroin was recovered from the vehicle. The actions of CRAIG and Sandra were monitored via pole camera's located at all three residences.

On Wednesday, November 7, 2018 TFO's intercepted communications via court authorized Title III (3:18MJ103) between CRAIG and Wayne CLYBURN. CRAIG calls CLYBURN and asks if he found CRAIG's flip phone at his residence, 193 Robelei Drive. CLYBURN advises that he has not. CRAIG advises that the last time he saw it was when the other dude came up. CLYBURN advises that he remembers.

On Sunday, November 11, 2018 TFO's intercepted communications via court authorized Title III (3:18MJ103) between CRAIG and Wayne CLYBURN wherein CRAIG advises CLYBURN that he is about to come to his residence (193 Robelei Drive) and asks if CLYBURN still needs that done. CLYBURN advises CRAIG that he already lost. CLYBURN advises CRAIG that he put in 42 and only got 22 out of it. Investigators believe CLYBURN is referring to the amount of cocaine he is using to make "crack" cocaine. CRAIG advises CLYBURN to leave it there and he is on his way.

On Wednesday, December 26, 2018, TFO's intercepted communications via court authorized Title III (3:18MJ103) between CRAIG and Wayne CLYBURN wherein CLYBURN advises CRAIG that he has that for him if he comes out. CLYBURN confirms that he is just letting CRAIG know. CRAIG says he is on his way up to his residence.

6

to Ranson, WV in attempt to surveil and if needed intercept CRAIG's vehicle. The video surveillance revealed CRAIG return with JANSEN to 96 Stayman Dr. and enter a Buick driven by SANDRA. They were followed to Martinsburg, WV. It was revealed through wire interceptions SANDRA and CRAIG were going Christmas Shopping. One of CRAIG's final conversation with the unknown male was "you are a joke." These intercepted communications reveal that CRAIG (a convicted felon) continues to have access to, possess, and use firearms.

26. As a result of extensive observation, authorized interceptions, and investigation, EPD&VCTF investigators are aware that this drug trafficking organization, specifically ARMSTEAD CRAIG and JANSEN CARR, are engaging in drug transactions during all hours. Due to the fact that multiple drug transactions have been observed to have occurred between the hours of 10:00 pm and 6:00 am, investigators are seeking authority to execute these search warrants during any time, day or night, where officer safety and evidence preservation are of primary concern.

## Conclusion

27. The facts and circumstances stated herein establish probable cause that Armstead CRAIG is engaged and will continue to be engaged in the commission of the distribution of and possession with intent to distribute cocaine and heroin, and the search of the residence at 146 Robelei Drive, Ranson, WV, will result in the acquisition of sufficient relevant evidence of the commission of these offenses.

28. Your affiant believes that failure to maintain the confidentiality of the ongoing investigation would jeopardize the use of information already obtained in the investigation and would impair the continuation of the investigation, wherefore, Sergeant Bowman respectfully petitions that this Honorable Court seal the attached application for this search and seizure warrant until the appointed court orders the release of this affidavit.

## Oath

The information in this affidavit is true to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NAUGHT

Jonathan Bowman
Sergeant West Virginia State Police
Eastern Panhandle Drug & Violent Crimes Task Force

Subscribed and sworn to before me this 28th day of December, 2018.

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE

7